UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
DR. MAC TRUONG,                                             :    **OPINION AND ORDER**
                                                            :
                    Plaintiff,                              :
                                                            :    06 Civ. 1430 (SAS)
         - against -                                        :
                                                            :
STEPHEN P. McGOLDRICK, PAUL J.                              :
CURRAN, LUIS A. GONZALEZ, MILTON                            :
L. WILLIAMS, BETTY WEINBERG                                 :
ELLERIN, GEORGE D. MARLOW, and                              :
ANGELA M. MAZZARELLI,                                       :
                                                            :
                    Defendants.                             :
------------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

Dr. Mac Truong ("Truong" or "plaintiff"), a disbarred attorney, is suing the Departmental Disciplinary Committee for the First Judicial Department (the "Committee") as well as Justices, and former Justices, of the Supreme Court of the State of New York, Appellate Division, First Department (the "First Department").[1] The instant pro se action, based on diversity of citizenship, seeks billions of dollars of damages for: (1) the alleged violation of plaintiff's constitutional rights to due process and religious freedom; and (2) defamation

---

[1] Paul J. Curran is the chairman of the Committee and Stephen P. McGoldrick is a staff attorney with the Committee (collectively, the "Committee defendants"). The remaining defendants are Justices and former Justices of the First Department (collectively, the "State Judiciary defendants").

and/or libel.[2] Defendants now move to dismiss the Complaint on the following grounds: (1) the Eleventh Amendment to the United States Constitution; (2) the *Rooker-Feldman* doctrine; and (3) absolute judicial and quasi-judicial immunity. For the following reasons, defendants' motion is granted and plaintiff's Complaint is dismissed.

## I. BACKGROUND

### A. The *Broadwhite* Litigation

In 2000, Truong was a defendant in a landlord-tenant action entitled *Broadwhite Associates. v. Mac Truong and Maryse Truong*.[3] After a nonjury trial, the Honorable Harold Tompkins determined that Truong knowingly submitted false evidence, a forged lease, and offered false testimony in support of that lease.[4] On January 20, 2000, Justice Tompkins found in plaintiff's favor and awarded damages of $356,509.83.[5] The First Department affirmed the trial court's

---

[2] *See* Complaint filed February 22, 2006 ¶¶ 16-24. In addition to bringing a claim pursuant to section 1983 of Title 42 of the United States Code ("section 1983"), plaintiff brings a claim for conspiracy, alleging that defendants acted in concert to violate his constitutional rights to due process and freedom of religion. *See id.* ¶¶ 17, 20.

[3] Supreme Court, New York County, Index No. 101759/95.

[4] *See Broadwhite Assocs. v. Truong*, 294 A.D.2d 140, 141, 740 N.Y.S.2d 882 (1st Dep't 2002).

[5] *See id.* at 140.

determination that the proffered lease was forged and found that the "sanctions imposed by the court upon defendants for their unremitting course of obstructionist, frivolous and otherwise contemptuous conduct during this litigation, including disobedience of court orders, were entirely proper."[6]

## B. Disciplinary Proceedings

As a result of Truong's misconduct in the *Broadwhite* litigation, the Committee moved in the First Department for an order finding Truong guilty of professional misconduct and suspending him from the practice of law.[7] The Committee's motion was granted and Truong was suspended pending a hearing by the Committee to consider evidence of mitigation or aggravation and to recommend a sanction.[8] After the hearing, the Committee sought an order confirming the recommendation of the Hearing Panel that Truong be disbarred as an attorney and counselor-at-law in the State of New York.[9] The First Department confirmed the Hearing Panel's recommendation and disbarred

---

[6] *Id.* at 141.

[7] *See In re Truong*, 2 A.D.3d 27, 768 N.Y.S.2d 450 (1st Dep't 2003) (per curiam) ("Suspension Order").

[8] *See id.* at 30.

[9] *See In re Truong*, 22 A.D.3d 62, 800 N.Y.S.2d 12 (1st Dep't 2005) ("Disbarment Order").

3

Truong, stating:

> The record conclusively establishes that respondent [Truong] is unfit to practice law. He submitted a forged document to the court in *Broadwhite* and testified falsely in support thereof and, far from demonstrating any remorse, he steadfastly refuses to acknowledge that he committed any misconduct. He is undeterred in frivolous and contemptuous conduct. Disbarment is the appropriate sanction.[10]

## C. Plaintiff's Allegations

In his Complaint, plaintiff claims that he is

a polyglot, patented inventor, psychologist, political scientist, philosopher, author of books in three languages, TV producer. He is also most of all creator, founder and leader of a new world religion capable of ending all violent theological differences or armed conflicts among existing major world religions, building from scratch an ultramodern city called World Cap serving as the political and cultural capital of the world, and raising human consciousness to the next level of civilization in long-lasting peace, harmony and prosperity for all humankind, based on Plaintiff's original method of thought processing called Absolute Relativity, and a world constitution written and published by him about 1978 to establish the Universal Republic of the world empowered by a federal democratic and liberal world government entitled the World Unfolding Structure of Civilization, in a new era to be known as the Absolute Relativity era, practicing reliability, productivity and respectability in Absolute Relativity, i.e. with balance,

---

[10] *Id.* at 67.

4

common sense and reason.[11]

Plaintiff then alleges that defendants "acted in concert to severely damage his reputation, credibility, profession and business by intentionally and maliciously making outrageous, egregious, defamatory and libelous false statements of fact aimed at plaintiff to portray him as a liar, a fraud and a thief."[12] In particular, Truong complains that on December 2, 2003 and August 11, 2005, defendants "intentionally and maliciously made false written and published statements of fact that are libelous, slanderous and/or defamatory regarding Plaintiff."[13] The dates referred to by Truong are the dates of the suspension order and disbarment order, respectively. Plaintiff's principal grievance is with the First Department's finding, *inter alia*, that Truong submitted a forged lease to the trial court in the *Broadwhite* litigation.[14] The First Department's reference to this

---

[11] Complaint ¶ 12.

[12] *Id.* ¶ 14.

[13] *Id.* ¶¶ 15-16.

[14] *See In re Truong*, 2 A.D.3d at 28 ("The instant petition is premised, in part, upon a Supreme Court landlord-tenant action entitled *Broadwhite Assoc. v. Mac Truong & Maryse Truong* (NY County, Index No. 101759/95) in which the trial court found that respondent, who was representing himself and his wife, offered a forged lease into evidence and gave false testimony in support of this document."); *In re Truong*, 22 A.D.3d at 63 ("This evidence was the finding of the trial court in a Supreme Court landlord-tenant action that respondent offered a forged lease into evidence and gave false testimony in support thereof.").

5

allegedly false statement libeled, defamed and/or slandered plaintiff in addition to violating his constitutional rights to due process and religious freedom.[15] Plaintiff seeks $8,700,000,000 in damages, as well as punitive damages, attorneys' fees and costs.[16] Plaintiff also seeks an order directing defendants to "publicly offer apology to Plaintiff and withdraw all their libelous and/or defamatory statements against Plaintiff."[17]

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[a] court may not dismiss an action 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[18] The task of the court in ruling on a motion to dismiss is "merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof."[19] "Thus, '[t]he issue is not

---

[15] *See* Complaint ¶¶ 17, 20, 23.

[16] *See id.* WHEREFORE Clause.

[17] *Id.*

[18] *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 590 (2d Cir. 2006) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

[19] *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004) (internal quotation marks and citation omitted).

6

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"[20]

Furthermore, a complaint need not state the legal theory, facts, or elements underlying the claim in most instances.[21] Pursuant to the simplified pleading standard of Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must include only "'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[22] Under that pleading standard, "a plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests."[23]

When deciding a motion to dismiss, courts must accept all factual allegations as true and draw all reasonable inferences in the non-moving party's

---

[20] *York v. Association of Bar of City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

[21] *See Phillips v. Girdich,* 408 F.3d 124, 127 (2d Cir. 2005). *See also Simpson v. Nickel*, No. 05-4686, 2006 WL 1585445, at *1 (7th Cir. June 12, 2006) ("One pleads 'claims' (which is to say, grievances) rather than legal theories and factual specifics.").

[22] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting Fed. R. Civ. P. 8(a)(2)). *See also Simpson*, 2006 WL 1585445, at *1 (stating that *Swierkiewicz's* holding that plaintiffs need not allege either the factual or legal elements of a prima facie case under the employment discrimination laws is "equally applicable to every other federal claim").

[23] *Leibowitz*, 445 F.3d at 591.

7

favor.[24] And when a plaintiff is proceeding pro se, courts are instructed to construe the complaint liberally.[25] This is particularly important where a pro se plaintiff alleges a civil rights violation.[26]

Finally, while courts generally may not consider matters outside the pleadings in determining if a complaint should survive a Rule 12(b)(6) motion, documents attached to the pleadings, documents referenced in the pleadings, and documents integral to the pleadings may be considered.[27] Courts may also take judicial notice of facts within the public domain and public records if such facts and records are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."[28]

---

[24] *See id.* at 590 (citing *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

[25] *See Phillips*, 408 F.3d at 128 ("But as low as the requirements are for a complaint drafted by competent counsel, we hold *pro se* complaints to an even lower standard.") (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)).

[26] *See Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002).

[27] *See Chambers*, 282 F.3d at 152-53; Fed. R. Civ. P. 10(c).

[28] Fed. R. Evid. 201(b)(2). *See also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) ("[A] district court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'") (quoting Fed. R. Evid. 201(b)(2)).

## III. DISCUSSION

### A. Jurisdiction Over Attorney Disciplinary Proceedings

The New York State Legislature has vested the exclusive jurisdiction to discipline attorneys in the four departments of the Supreme Court, Appellate Division.[29] Furthermore, the First Department has delegated to the Departmental Disciplinary Committee its judicial function of investigating charges of attorney misconduct.[30] Accordingly, the Committee, like the disciplinary and grievance

---

[29] The Judiciary Law of the State of New York states:

> The supreme court shall have power and control over attorneys and counsellors-at-law and all persons practicing or assuming to practice law, and the appellate division of the supreme court in each department is authorized to censure, suspend from practice or remove from office any attorney and counsellor-at-law admitted to practice who is guilty of professional misconduct, malpractice, fraud, deceit, crime or misdemeanor, or any conduct prejudicial to the administration of justice; and the appellate division of the supreme court is hereby authorized to revoke such admission for any misrepresentation or suppression of any information in connection with the application for admission to practice.

N.Y. Judiciary Law § 90(2).

[30] New York State regulations state as follows:

> This court shall appoint a Departmental Disciplinary Committee for the Judicial Department, which shall be charged with the duty and empowered to investigate and

9

committees in other jurisdictions, "is a delegatee of the powers of the Appellate Division as an aid to that Court in carrying out its statutory functions."[31]

### B. Eleventh Amendment

The Eleventh Amendment[32] bars actions against state officials sued in their official capacities where the state is the real party in interest.[33] Thus, defendants cannot be sued in their official capacities. However, Truong states that he is suing defendants in their individual capacities "acting in absence of all

---

> prosecute matters involving alleged misconduct by attorneys who, and law firms that, are subject to this Part and to impose discipline to the extent permitted by section 603.9 of this Part.

N.Y. Comp. Codes R. & Regs., tit. 22, § 603.4(a).

[31] *Rappoport v. Departmental Disciplinary Comm. for First Judicial Dep't*, No. 88 Civ. 5781, 1989 WL 146264, at *1 (S.D.N.Y. Nov. 21, 1989).

[32] The Eleventh Amendment provides:

> The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

[33] *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

10

jurisdiction and/or authority and/or official functions to harm plaintiff herein."[34] Moreover, the Eleventh Amendment does not bar a suit in equity against state officials who violate federal rights.[35] Here, plaintiff seeks injunctive relief in the form of an apology and retraction of all allegedly libelous statements. Thus, there is no Eleventh Amendment bar to plaintiff's request for injunctive relief or his monetary claims against defendants in their individual capacities.

### C. Judicial and Quasi-Judicial Immunity

The Supreme Court has firmly established that judges are immune from suit, including suit under section 1983, "for monetary damages arising from their judicial acts."[36] "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages."[37] Judicial immunity was created "for the benefit of the public, whose interest it is that the

---

[34] Plaintiff's Affirmation in Opposition to Defense Motion to Dismiss and for Injunctive Relief as Against the Plaintiff ¶ 113.

[35] *See Dube v. State Univ. of NY*, 900 F.2d 587, 595 (2d Cir. 1990) (holding that the Eleventh Amendment does not preclude a federal court from granting prospective injunctive relief against a state official sued in his or her official capacity).

[36] *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000) (citing *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam)).

[37] *Mireles*, 502 U.S. at 11 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

judges should be at liberty to exercise their functions with independence and without fear of consequences."[38] "Thus, if the relevant action is judicial in nature, the judge is immune so long as it was not taken in the complete absence of jurisdiction."[39]

In determining whether an action is "judicial in nature," courts must consider the nature of the act and whether it is a "function normally performed by a judge."[40] However, the Supreme Court has already characterized attorney disciplinary proceedings, albeit those conducted within the State of New Jersey, as "judicial in nature."[41] There is no reason why such characterization should not be extended to disciplinary proceedings conducted in the State of New York.[42] Thus,

---

[38] *Pierson v. Ray*, 386 U.S. 547, 554 (1967).

[39] *Huminski v. Corsones*, 396 F.3d 53, 75 (2d Cir. 2005). *See also Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'").

[40] *Stump*, 435 U.S. at 362.

[41] *Middlesex County Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 433-34 (1982) ("It is clear beyond doubt that the New Jersey Supreme Court considers its bar disciplinary proceedings as 'judicial' in nature.").

[42] *See Sassower v. Mangano*, 927 F. Supp. 113, 120 (S.D.N.Y. 1996) (stating that under *Middlesex*, "state bar disciplinary proceedings are clearly judicial in nature"), *aff'd*, 122 F.3d 1057 (2d Cir. 1997) (unpublished).

12

the First Department's rulings suspending, then disbarring, Truong are judicial in nature. Furthermore, the First Department clearly has subject matter jurisdiction over attorney disciplinary proceedings within its department. Therefore, the State Judiciary defendants sued herein in their individual capacities are immune from plaintiff's suit for money damages.

The same is true for the Committee defendants. "The concern for the integrity of the judicial process is reflected in the extension of absolute immunity to 'certain others who perform functions closely associated with the judicial process.'"[43] "Under the doctrine of quasi-judicial immunity, absolute immunity extends to administrative officials performing discretionary acts of a judicial nature."[44] Accordingly, quasi-judicial immunity bars plaintiff's monetary claims against Committee chairman Curran and Committee staff attorney McGoldrick. However, neither judicial immunity nor quasi-judicial immunity bars a claim for prospective injunctive relief.[45]

---

[43] *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)).

[44] *Sassower*, 927 F. Supp. at 120.

[45] *See Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984) ("We conclude that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity.").

## D. *Rooker-Feldman* Doctrine

The *Rooker -Feldman* doctrine[46] "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[47] The doctrine acknowledges that "Congress's grant to federal district courts of jurisdiction . . . 'is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to th[e United States Supreme] Court.'"[48] Thus, "federal district courts do not have jurisdiction over claims that have already been decided, or that are 'inextricably intertwined' with issues that have already been decided, by a state court."[49]

---

[46] *See generally District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).

[47] *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (per curiam).

[48] *Mitchell v. Fishbein*, 377 F.3d 157, 165 (2d Cir. 2004) (quoting *Verizon Maryland Inc. v. Public Serv. Comm'n*, 535 U.S. 635, 644 n.3 (2002) (alteration in original)).

[49] *Mitchell*, 377 F.3d at 165 (quoting *Bridgewater Operating Corp. v. Feldstein*, 346 F.3d 27, 29 (2d Cir. 2003) (per curiam)).

14

The Second Circuit has counseled that "'inextricably intertwined' means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding . . . , subsequent litigation will be barred under the *Rooker-Feldman* doctrine if it would be barred under principles of preclusion."[50] Accordingly, where a lawsuit or claim would be barred in state court by either res judicata or collateral estoppel, *Rooker-Feldman* prevents the federal court from exercising subject-matter jurisdiction.[51]

The determination that Truong knowingly offered false evidence and testimony was part of a state trial court judgment which was affirmed by an

---

[50] *Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir. 2004).

[51] Under the doctrine of res judicata, or claim preclusion, a party is barred from litigating a claim more than once. *See Quadrozzi Concrete Corp. v. City of New York*, No. 03 Civ. 1905, 2004 WL 2222164, at *4 (S.D.N.Y. Sept. 30, 2004).

> Under general principles of collateral estoppel, or issue preclusion, a judgment in a prior proceeding bars a party and its privies from relitigating an issue if: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*N.L.R.B. v. Thalbo Corp.*, 171 F.3d 102, 109 (2d Cir. 1999) (quotation marks and citation omitted).

15

appellate court. The Suspension and Disbarment Orders resulting from that determination were also state court judgments. By requesting that all allegedly libelous statements be withdrawn, plaintiff is asking this Court to review and overturn the state court determination in the *Broadwhite* litigation as well as the Suspension and Disbarment Orders. Furthermore, plaintiff had a full and fair opportunity to litigate the initial state court determination of forgery.[52] Plaintiff also had a full and fair opportunity to litigate the forged lease issue throughout the

---

[52] In suspending plaintiff, the First Department stated: "Contrary to his contentions, respondent had a full and fair opportunity to litigate the issues herein in the Supreme Court action and on its subsequent appeal. Similarly unavailing is respondent's assertion that the application of the doctrine of collateral estoppel is inappropriate, at this time, since his various appeals have not yet been exhausted." *In re Truong*, 2 A.D.3d at 29-30. If anything, plaintiff over-litigated the *Broadwhite* judgment.

> Despite the court order enjoining respondent from commencing any lawsuits arising from, or related to, the *Broadwhite Assoc. v. Truong* action, respondent commenced, without court permission, a series of federal actions in New York and New Jersey, where respondent resides, against the Supreme Court Justice presiding over the trial, the law firm representing the landlord, the landlord and its employees. All of these actions, which, in effect, sought to collaterally attack the underlying judgment, were ultimately dismissed.

*Id.* at 29.

16

course of his disciplinary proceedings.[53] Accordingly, principles of issue preclusion bar plaintiff from re-litigating the forged lease issue in a federal forum, albeit indirectly by requesting a retraction. For all of these reasons, plaintiff's claim for injunctive relief is barred by the *Rooker-Feldman* doctrine and must be dismissed.

## IV. CONCLUSION

In sum, plaintiff's claims against defendants in their official capacities (if any have been brought) are barred by the Eleventh Amendment. Plaintiff's monetary claims against defendants in their individual capacities are barred by judicial and quasi-judicial immunity. Finally, plaintiff's claim for equitable relief is barred by the *Rooker-Feldman* doctrine. Accordingly, plaintiff's Complaint is dismissed with prejudice. In addition, given plaintiff's history of vexatious and frivolous litigation, I hereby grant the injunction requested by defendants. Accordingly, plaintiff is enjoined from commencing any actions or proceedings against the Committee defendants or the State Judiciary defendants,

---

[53] By notice of cross-motion, plaintiff moved to dismiss, or alternatively stay, the suspension petition. *See id.* at 28. Plaintiff also vigorously litigated against the disbarment petition. *See In re Truong*, 22 A.D.3d at 63-64 ("Respondent cross-move[d] for an order dismissing the petition, disaffirming the recommendation of the Hearing Panel and the Referee's report and reinstating him to the practice of law nunc pro tunc from the date of his interim suspension.").

17

or against any other parties, relating to the *Broadwhite* litigation or relating to his suspension or disbarment from the practice of law, absent prior approval from this Court. The Clerk of the Court is hereby directed to refuse for filing any document plaintiff attempts to file, unless accompanied by leave from a Magistrate Judge of this Court.

        The Clerk of the Court is further directed to close this motion (#2 on the docket) and this case.

        SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
            June 27, 2006

## - Appearances -

**Plaintiff (Pro Se):**

Mac Truong
327 McDemott Avenue
Teaneck, NJ 07666

**For Defendants:**

Monica Connell
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8965